## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2019, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Earl McCoy
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph R. Kimerer, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 18, 2019

Court of Appeals Case No.
19A-CR-932

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1803-F4-7

**Tavitas, Judge.**

## Case Summary

Joseph R. Kimerer, Jr. ("Kimerer"), appeals his aggregate fifty-three-year sentence, pursuant to a guilty plea, for six counts of vicarious sexual gratification, Level 4 felonies; one count of vicarious sexual gratification, a Level 5 felony; and one count of attempted child exploitation, a Level 5 felony. We affirm.

## Issues

Kimerer raises two issues on appeal, which we restate as follows:

I. Whether the trial court overlooked significant mitigating factors and found improper aggravating factors.

II. Whether Kimerer's sentence is inappropriate in light of the nature of the offenses and his character.

## Facts

At the time of the underlying offenses, Kimerer was a forty-six-year-old public school teacher and private baseball pitching coach in Tippecanoe County. On February 27, 2018, the Lafayette School Corporation reported to a school resource officer at Kimerer's employer-school that Kimerer communicated inappropriately with eight young male students ("the boys"). On February 28, 2018, the school resource officer reviewed surveillance footage from Kimerer's employer-school and observed footage that depicted the following: (1) Kimerer entered the faculty lounge, which included a restroom, with a lotion bottle; (2) Kimerer escorted a young boy, J., into the lounge, and Kimerer exited the

lounge; (3) J. subsequently exited the lounge empty-handed; and (4) Kimerer entered the faculty lounge, retrieved the lotion bottle, and exited.

[4] In ensuing interviews with a forensic interviewer, the boys reported that, purportedly in the context of counseling them about puberty, Kimerer:

- asked the boys whether they had pubic hair and/or asked about the size of their penises;

- asked the boys to measure and document the sizes of their penises in varying states of arousal;

- requested photographs of the boys' penises in varying states of arousal;

- directed the boys to masturbate and gave the boys instructions;

- asked about the frequency with which the boys masturbated;

- requested and/or obtained photographs or videos of the boys engaged in masturbation, including images of their ejaculate;

- provided the boys with lotion or lubricant to aid masturbation;

- instructed the boys on how to access and navigate pornography;

- showed pornographic images to the boys that depicted boys or adults;

- instructed the boys to masturbate in the school bathroom, the restroom in the faculty lounge, and restrooms at pitching practices;

- regularly instructed the boys to delete text messages, cell phone search histories, and images exchanged between the boys and Kimerer; and

- created a code in which Kimerer could freely discuss masturbation with the boys without alerting the boys' parents.

[5] On March 9, 2018, the State charged Kimerer with various offenses. On February 1, 2019, Kimerer entered a plea agreement with the State, wherein he

agreed to plead guilty to six counts of vicarious sexual gratification, Level 4 felonies; one count of vicarious sexual gratification, a Level 5 felony; and one count of attempted child exploitation, a Level 5 felony. In exchange for Kimerer's guilty plea, the State agreed to dismiss all remaining counts.[1] Sentencing was left to the trial court's discretion.

[6] The trial court conducted Kimerer's sentencing hearing on April 5, 2019. The State filed a sentencing memorandum that included victim statements and a report ("Lanning Report") regarding an evaluation performed by Mr. Kenneth Lanning—an expert in behavioral analysis of child molesters. The trial court admitted the Lanning Report into evidence over Kimerer's objection. Before it imposed its sentence, the trial court identified as aggravating factors: (1) Kimerer's violation of his position of trust and authority as a teacher and coach; (2) Kimerer's "repeated, manipulative and sexual [abuse] of eight little boys" over "a two-year period"; (3) Kimerer's lack of insight into his actions; (4) two of Kimerer's victims were under the age of twelve; and (5) "[that] the harm suffered by the victims [wa]s significant and greater than the elements of the crime." Tr. Vol. II p. 201.

[7] As mitigating factors, the trial court found that: (1) Kimerer entered a guilty plea, which "spare[d] the boys and their families the stress of a very public [ ]

---

[1] The State dismissed two counts of child exploitation with intent to satisfy or arouse sexual desires, Level 5 felonies, and one count of child solicitation, a Level 5 felony.

trial"; (2) Kimerer had no prior criminal history and "led a law-abiding life for a substantial period of time," during which Kimerer was educated and maintained a good employment record as a teacher;[2] (3) Kimerer's strong support system in his parents; and (4) Kimerer's incarceration would cause further hardship to his children, who already experienced their parents' divorce as a result of Kimerer's crimes.[3]

[8]    The trial court concluded that the aggravating factors outweighed the mitigating factors and remarked, in part, as follows:

> On Count I, regarding A.[ ] where you told him to look up porn, masturbate, go to the bathroom and tell if anything came out, it happened on school property, almost every practice. You supplied him lotion. You asked him for a photo of stuff coming out. You told him to delete texts. You asked him about pubic hairs. I sentence you to seven years. On Count IV, regarding T.[], where you asked for photos and videos of his genitals, you showed porn, you told him to go to [the] faculty bathroom to masturbate, you provided him the cream. You asked him to text you how much came out. You asked him if he was doing baseball homework. You told him to delete those messages. You told him you were doing all this because you wanted him to be better. I sentence you to seven years. On Count VII, regarding L.[ ], [w]here you asked him if he ever pleasured himself and how often. How does he do it. You told him to delete the messages. You told him to tell [you] how big his penis

---

[2] The trial court noted that Kimerer's positive employment record was "diminished" by his abuse of his position of trust as a teacher to exploit children. Tr. Vol. II p. 204.

[3] The trial court deemed the "hardship to dependents" mitigator to be diminished by Kimerer's ex-wife's request that Kimerer should remain incarcerated until their children achieve majority.

was. You asked him for pictures. You used the code word Cards win.[4] You told him to do all this because it would reduce his outbursts. I sentence you to five years. And by the way, this was one of your family friends. Regarding Count IX, M.[ ] You asked him how big his penis was, how much pubic hair he had. You asked for pictures of his penis, both soft and hard, every other day or once a week according to M.[ ] You gave him a ruler to measure himself. You texted and phoned him asking him to masturbate. You told him to delete the messages that could, cause, you could get in trouble. You showed him photos and videos of other boys masturbating. You called it baseball homework. I sentence you to seven years. On Count XII, regarding J.[ ] You told [him] that masturbation strengthens his forearm. Asked how many times [he] does it, [ ] how many times does stuff come out. And then you told him that answer would depend on whether you were going to be doing breaking ball that day. You asked about his pubic hair. You told him not to tell anybody. You gave him lotion to go to the bathroom because that's on school video on that count, again Count XII, I sentence you to seven years. On Count XVI, this is a child under twelve. You asked him to measure himself, keep it a secret. I sentence you to eight years. I'm aggravating that because he was under twelve. On Count XVIII, where you told K.[ ], you bought a bottle of lub[ricant] for him. You told him to go to the teacher's bathroom to masturbate. When K.[ ] said it didn't happen. You told him to go back again and you gave him an extra twenty dollars to do it in his mind, he thought he was being paid for that. I sentence you to four years. On Count XX, regarding M.[ ] You asked about the length of his penis at four, at least four times according to him. Told him to go home and masturbate because it makes his behavior better. You showed

---

[4] In a victim impact letter to the trial court, L. wrote that "[L.] was a Cardinals fan and if [L.'s] parents saw [Kimerer's 'Cards win' text] that they wouldn't think it was suspicious. So [Kimerer] would text [L.] from time to time and if [L.] responded with 'yes' then [Kimerer] would know it was okay to text [L.] about masturbation." Appellant's App. Vol. II p. 141.

him motions on how to do it. You gave him a sticky note to write down the length[,] when he does and when [he] doesn't do it or when he touches it. And he's under twelve. I sentence you to eight[ ] years.

*Id.* at 206-07. The trial court ordered Kimerer's sentences to be served consecutively for an aggregate sentence of fifty-three years, with forty-four years executed in the Department of Correction ("DOC") and nine years suspended to supervised probation, with the first three years to be served in community corrections. *Id.* at 207. Kimerer now appeals.

## Analysis

### I.  *Sentencing Discretion*

[9]     Kimerer argues that the trial court abused its sentencing discretion and asks us to "revise[ ] [his fifty-three-year sentence] to the advisory sentence on each count with all sentences being served concurrently for a total aggregate sentence of six (6) years with a portion of the sentence suspended to probation." Kimerer's Br. p. 38. Sentencing decisions rest within the sound discretion of the trial court. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[10]    A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that

includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007)).

### A. Mitigating Factors

[11] A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A trial court has discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the defendant's proffered factors to be mitigating. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind. Ct. App. 2003). A claim that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating factor is significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

### 1. Insufficient Weight

[12] Kimerer contends that the trial court failed to give considerable mitigating weight to: (1) his entry of a guilty plea; (2) his lack of any prior criminal history; (3) his strong family support; and (4) "the fact that his incarceration would be a hardship on his dependents[.]" *See* Kimerer's Br. p. 26. Each of these claims is unavailing because the weight given to an aggravating or mitigating factor is not subject to review. *See Anglemyer*, 868 N.E.2d at 493 (holding that "the relative weight or value assignable to" aggravating or mitigating factors that were found

or overlooked is not subject to review for abuse).  We find no abuse of sentencing discretion.

### 2. Education and Employment Record

Next, Kimerer argues that the trial court "improperly diminished [his education and good employment history] by concluding that he used his position to abuse children."  Kimerer's Br. p. 25.  Kimerer argues that "this flawed determination is not supported by the evidence."  *Id*.

Kimerer correctly asserts that a trial court may abuse its discretion by entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record.  *McElfresh*, 51 N.E.3d at 107 (citing *Anglemyer*, 868 N.E.2d at 490-91).  Such is not the case here.

Overwhelming evidence establishes that, while Kimerer worked as a public school teacher and as a private baseball coach, he directed, induced, aided, or caused seven young boys—each of whom was under the age of sixteen—to engage in masturbation with the intent to arouse the sexual desires of the young boys and/or to satisfy Kimerer's sexual desires.  Kimerer also requested and obtained pictures of an eighth boy's penis.  We find no abuse of sentencing discretion.  *See Leffingwell v. State*, 810 N.E. 2d 369, 371 (Ind. Ct. App. 2004) (upholding sentence, including finding of violation-of-position-of-trust aggravator, where defendant "spoke with his ten-year-old step-daughter frankly about masturbation and oral sex, showed her where she should touch herself

when masturbating," and justified such actions when "[done for] educational" purposes).

### 3. Overlooked Mitigating Factors

Kimerer also argues that the trial court overlooked the following mitigating factors that "were clearly supported by the record": (1) Kimerer's remorse; (2) Kimerer's low overall score on the Indiana Risk Assessment System ("IRAS"); (3) Kimerer was likely to respond to probation or short-term imprisonment; and (4) "there were substantial grounds tending to excuse or justify Kimerer's actions though failing to establish a defense." Kimerer's Br. pp. 32, 33.

### a. Expression of Remorse

As for Kimerer's claim that the trial court failed to consider his expression of remorse, a trial court's determination of a defendant's remorse is similar to a determination of credibility. *See Stout v. State*, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), *trans. denied*. Without evidence of some impermissible consideration by the trial court, we accept its determination as to remorse. *Id.*

Here, the trial court found that Kimerer lacked insight into the wrongfulness of his actions. Tr. Vol. II p. 202. Although Kimerer claimed to be remorseful, the evidence did not support this claim. Rather, Kimerer appeared to be preoccupied with the implications of his offenses for himself and his family and intent on excusing or justifying his wrongful conduct. *See* Appellant's App. Vol. II p. 126 ("I am embarrassed, humiliated, and, above all, scared about the present and immediate future for my wife, my three children, my parents, and

myself. I am full of remorse about the inadvertent unlawful conduct on my part
. . . .").  As the trial court told Kimerer:

> You continue to rationalize[,] saying that you were trying to
> condition these boys.  * * * * * But you don't really talk about
> your acts.  You . . . never [ ] talked about what you did with each
> boy.  * * * * * You never once [ ] admit those acts.  . . . [Y]ou
> called it inadvertent unlawful behavior.  I'm not convinced that
> you're completely taking full responsibility [for] this.

Tr. Vol. II p. 202.  The trial court did not abuse its discretion in not recognizing
Kimerer's remorse as a mitigating factor.

### b.  Low-Risk of Reoffending

[19]     Regarding Kimerer's claim that the trial court failed to deem his overall low
score on IRAS to be a mitigating factor, our Supreme Court has held that,
although trial courts may "employ such results in formulating the manner in
which a sentence is to be served[,]" the IRAS scores "are not intended to serve
as aggravating or mitigating" factors.  *See Kayser v. State*, 131 N.E.3d 717, 722
(Ind. Ct. App. 2019) (quoting *Malenchik v. State*, 928 N.E.2d 564, 575 (Ind.
2010)).  Kimerer has not demonstrated that this purported mitigating factor is
significant.

### c.  Likelihood to Succeed on Probation or in Short-Term Imprisonment

[20]     Kimerer asserts that the trial court erred when it did not find his likelihood of
responding affirmatively to probation or short-term incarceration to be
mitigating.  At the sentencing hearing, counsel for Kimerer argued that Kimerer

has no prior criminal history and, thus, has "[never] been on probation and violated [probation]"; abided by the court's orders during the pendency; and "followed all the rules laid upon him by this Court [ ] even though they've been incredibly difficult to follow." Tr. Vol. II p. 183. In light of the trial court's findings, however, that: (1) Kimerer lacked insight into the wrongfulness of his conduct; (2) his expression of remorse was not significant; (3) his violation of his position of trust as a coach and teacher was significant; and (4) extensive harm resulted from Kimerer's actions, we cannot say that the trial court abused its discretion when it did not identify this purported mitigating factor.

### d. Excuse or Justification for Kimerer's Conduct

[21] In support of Kimerer's claims that the trial court erred in failing to find "that there were substantial grounds tending to excuse or justify Kimerer's actions though failing to establish a defense," he cites his counsel's remarks at the sentencing hearing:

> [Kimerer's] been honest from the beginning. His story has not changed. [ ] * * * * * [T]hings were taken out of context. * * * * * Did he commit a crime? Did he later learn that he committed a crime? Did he later learn that he committed a serious crime? Yes. His story stayed the same from day one. And he tried to explain it today. I understand that it doesn't resonate with the victim[s'] parents. I get it. And I'm not saying it should. And I'm not saying it's a defense. He's not saying he's not guilty.

Kimerer's Br. p. 33; Tr. Vol. II pp. 181-82.

[22] Kimerer has not shown that this proffered mitigating factor is significant or clearly supported by the record. The fact that Kimerer maintains that he intended to teach the boys about puberty is not significant in light of the crimes to which he pleaded guilty. Moreover, the trial court, within its sound discretion, did not deem Kimerer's excuse or justification to be credible. *See Hunter v. State*, 72 N.E.3d 928, 935 (Ind. Ct. App. 2017) ("[T]he finding of a mitigating factor is discretionary, and the trial court is neither obligated to accept the defendant's argument as to what constitutes a mitigating factor nor required to give the same weight to mitigating evidence that the defendant would."). We find no abuse of discretion.

### B. Improper Aggravating Circumstances

[23] Next, Kimerer argues that the trial court found improper aggravating circumstances. A single aggravating circumstance may support the imposition of an enhanced sentence. *McNew v. State,* 822 N.E.2d 1078, 1082 (Ind. Ct. App. 2005). If a trial court abuses its discretion by improperly considering an aggravating circumstance, we remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. As noted above, a trial court's sentencing order may not be challenged as reflecting an improper weighing of mitigating factors. *Id*.

### 1. Lanning Report

Kimerer first argues that the trial court improperly considered and "g[a]ve considerable weight to" the opinion letter of Kenneth Lanning in sentencing him. *See* Kimerer's Br. pp. 19-21. We find no support for this claim in the record, and it must fail. In its sentencing statement, the trial court remarked:

> [Kenneth Lanning] d[id]n't even meet with Mr. Kimerer, and interview him himself. I know [Lanning] makes some conclusions based upon his review of the documents [in the record] but I don't give a lot of weight to that because I think more weight should be appropriately given to the nature of these charges, the facts that support them, and the letter I've heard from the victims.

Tr. Vol. II p. 198. We find no abuse of sentencing discretion here.

### 2. Trial Publicity

Kimerer contends "that his sentence [may have been] unduly and inappropriately aggravated as a result of the pre-trial publicity and public sentiment against him." Kimerer's Br. p. 38. We cannot agree, based upon the following statements of the trial court:

> Let me just pause to say, I know there's been a lot of publicity about this. * * * * * I deal with facts, that's my job. That's what we lawyers do. . . . I don't take any of that into consideration in my sentence here today. The only time I had to read [press articles] was when I was forced to read it by, with the motion filed by the defense on a Motion for Change, Change of Venue. But they have no weight with me. [ ]

Tr. Vol. II pp. 202-203. We find no abuse of sentencing discretion here.

### 3. *Violated Position of Trust*

[26] Next, Kimerer argues that, although "his violation of his position of trust as a teacher and a coach is a valid aggravating factor[,]" the trial court "appears to have improperly used this one factor, stated multiple ways, to aggravate Kimerer['s] sentence more than once." Kimerer's Br. p. 26.

[27] It is well-settled that a single aggravating circumstance may support the imposition of an enhanced sentence. *McNew,* 822 N.E.2d at 1082. The record here reflects only that the trial court deemed Kimerer's violated-position-of-trust to be a significant aggravating factor. In all, the trial court relied upon five aggravating factors when it imposed Kimerer's enhanced sentence, not least of these being that Kimerer was a trusted teacher and coach in whose care unsuspecting parents had entrusted the boys when Kimerer exploited the boys. We find no abuse of discretion.

### 4. *Seriousness of the Offenses*

[28] Kimerer argues that the trial court improperly considered the nature and circumstances of the crimes as an aggravating factor, "without [ ] explaining why this particular case was more serious or worse than any other Vicarious Sexual Gratification offenses as Level 4 felonies[.]"[5] Kimerer's Br. p. 30.

---

[5] Specifically, Kimerer argues that: (1) "there was no touching involved"; (2) he was not in the presence of any of the victims when they engaged in any sexual activity; (3) "[t]he acts committed [ ] did not provide any sexual pleasure for Kimerer and were not intended to provide Kimerer any sexual gratification"; (4) "Kimerer did not have a criminal intent when assisting these children and answering these questions"; and (5) "the types of

[29]    In determining whether the nature of the offense is an appropriate aggravating factor, "a material element of a crime cannot be an aggravating circumstance"; however, "the nature and the circumstances of the crime can be an aggravator." *Gleason v. State,* 965 N.E.2d 702, 711 (Ind. Ct. App. 2012); *see Kien v. State,* 782 N.E.2d 398, 414 (Ind. Ct. App. 2003) (concluding that trial court's finding that five-year-old victim was extremely vulnerable to sexual predation because of her tender years was an appropriate sentencing consideration), *trans. denied.* "If the nature of the offense is identified as an aggravating factor, the trial court must discuss facts that go beyond the statutory requirements of the crime." *Gleason,* 965 N.E.2d at 711 (citing *McElroy v. State,* 865 N.E.2d 584 (Ind. 2007)).

[30]    Here, the trial court found that Kimerer's crimes caused extensive harm not only to the boys, but also to the boys' parents, the boys' extended families, the school corporation, and the community at-large. *See* Tr. Vol. II p. 203 ("[T]he harm suffered by the victims is significant and greater than the elements of the crime, just as what I've already explained. Not only the violation of trust but the harm suffered by these children in this local community and their families and the school corporation and every-, everybody else.").

---

sexual acts the victims were subjected to were less serious in nature than those endured by many sex offense victims." Kimerer's Br. pp. 30-31.

[31]  In its discussion of this factor, the trial court expressly alluded to its discussion of the related violated-position-of-trust aggravator as follows:

> And it's surprising to me that an adult such as yourself and a teacher dealing with kids, day in and day out, can sit here and say I didn't know it was a crime to tell a child to go fondle himself and to pleasure himself. That doesn't pass a lot of weight with me. As a teacher and coach, these children and parents looked up to you and trusted you. * * * * * The children. Your actions caused direct, immediate and lasting damage to these Children. They were young impressionable kids looking for guidance and to better themselves at school or in sport. You took the opportunities you had with them and turned it into a sick sexual experience. * * * * * Parents. You robbed these parents of the ability to place trust in the future in other teachers and coaches or other adults who care for their children. They trusted you. They left their kids in your care. And behind their back, you were telling these kids to do these sexual things. * * * * * Families of the victims. And when we talk about violating trust, your actions have also impacted the sisters, brothers, grandparents, and extended families of these kids. * * * * * Your own [ ] own family has been shattered by this entire ordeal. * * * * * Violating trust and authority as a teacher employed by this local school corporation and conducting these acts on school property. * * * * * You didn't have any regard for that.

*Id.* at 199-201.

[32]  The record thus reveals that, when the trial court identified the nature of the offenses as an aggravating circumstance, it engaged in an extensive discussion of facts that went beyond the statutory requirements for Kimerer's offenses and encompassed the unique vulnerabilities of Kimerer's victims; and the numerous

indirect victims of his crimes. The trial court did not err in considering these circumstances in aggravation, and we find no abuse of sentencing discretion.

### 5. *Lack of Insight*

[33] Kimerer argues that the trial court erred in finding, as an aggravating factor, that he lacked insight into the wrongfulness of his conduct. Kimerer's Br. p. 32. "A trial court's determination of a whether a defendant appreciates the wrongfulness of his conduct is similar to its determination of credibility; absent evidence of some impermissible consideration by the trial court, we accept its decision." *See Sandleben v. State*, 29 N.E.3d 126, 136 (Ind. Ct. App. 2015), *trans. denied.*

[34] Here, in a pre-sentencing letter to the trial court, Kimerer maintained that he unwittingly committed seven crimes of vicarious sexual gratification and one count of attempted child exploitation in the course of "giving [the boys] advice, guidance, and feedback on a topic (puberty) that most adults prefer not to discuss"; "giving the[ ] [boys] answers to their questions based on [his] experience as an educator and the guidelines of [his] profession"; and "helping them achieve their athletic goals without risking long-term harm to their arms." Appellant's App. Vol. II pp. 126-130. Kimerer added that his conversations with the boys "about puberty and throwing curveballs" were prompted by a former doctor's advice that "[Kimerer] shouldn't throw curveballs until [he] reach[ed] a specific point of puberty, which, in [the doctor's] estimation was when pubic hair started to grow and the penis grew in length and circumference. [The doctor] also warned [Kimerer] about too much

masturbation . . . ." *Id*. at 129.  Further, in his remarks to the trial court at the sentencing hearing, Kimerer repeatedly characterized his wrongdoing as educational and "be[ing too] [ ] candid with [his] idea and advice[.]"  Tr. Vol. II pp. 170, 174, 175.

[35]  After considering the foregoing facts, the trial court discussed its finding that Kimerer lacked insight into the wrongfulness of his conduct as follows:

> Your claim that this was all somehow a method of conditioning and strengthening pitching arms to throw curve balls would be laughable! Laughable! [i]f it wasn't so serious.  You continue to rationalize about this saying that you were trying to condition these boys.  That puberty is a part[ ] of it.  But you don't really talk about your acts. . . .[Y]ou're still not admitting to what the boys say . . . .  []I think I saw one place in these, in these writings that you called it inadvertent unlawful behavior.  I'm not convinced that you're completely taking full responsibility of this.

*Id*. at 202.  A determination of Kimerer's credibility was within the province of the trial court, and we do not judge credibility on appeal.  We cannot say that the trial court's finding in this regard was an abuse of its sentencing discretion.

## II.     *Inappropriateness of Sentence*

[36]  Kimerer argues that his aggregate sentence of fifty-three years is inappropriate in light of the nature of his offenses and his character.  Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender."  The defendant bears the burden to persuade this court that his or her

sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

[37] In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State,* 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders,* 71 N.E.3d at 844 (citing *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[38] In determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime. *Childress*, 848 N.E.2d at 1081. Kimerer received enhanced sentences, but he did not receive maximum sentences. Kimerer pleaded guilty to six Level 4 felonies. The sentencing range for a Level 4 felony is between two and twelve years, with an advisory sentence of six years. The trial court sentenced Kimerer to seven or eight years on each Level 4 felony conviction. Although the trial court could have sentenced Kimerer to as many as seventy-two years for the Level 4 felonies, it sentenced Kimerer to forty-four years for these offenses.

[39] Kimerer also pleaded guilty to two Level 5 felonies. The sentencing range for a Level 5 felony is between one and six years, with an advisory sentence of three years. Although Kimerer faced a maximum sentence of twelve years for his

Level 5 felony convictions, the trial court imposed one five-year sentence and one-four-year sentence for these convictions. Thus, although Kimerer faced a maximum aggregate sentence of eighty-four years, the trial court here imposed an aggregate fifty-three-year sentence.

[40] As to the nature of Kimerer's offenses, the record reveals that, while he served as their trusted baseball coach or teacher,[6] Kimerer directed, induced, aided, or caused seven of the boys—each of whom was under the age of sixteen and two of whom were under the age of twelve—to engage in masturbation with the intent to arouse the sexual desires of the young boys and/or to satisfy Kimerer's sexual desires. Kimerer also instructed an eighth boy to photograph and deliver pictures of the boy's penis to Kimerer. Nothing about these crimes warrants revision of Kimerer's sentences.

[41] Nor does Kimerer's character call for revision of his sentences. Kimerer lacks any prior criminal history; however, this fact is diminished by the facts and circumstances of the instant offenses. Kimerer committed these crimes under the guise of teaching the boys about puberty and improving their prospects as baseball pitchers. From a position of trust which afforded him considerable access to the boys, Kimerer induced the boys to engage in covert sexual behaviors and exploited their confidences. Kimerer took pains to conceal his

---

[6] As Kimerer argues in his brief, "In actuality, most of the victims were not his students, they were young pitchers whose parents hired Kimerer as a private baseball pitching coach." Kimerer's Br. p. 25.

wrongdoing by urging the boys to delete their electronic communications with him and by using coded language that would not raise their parents' suspicions. Kimerer's sentence is not inappropriate.[7]

## Conclusion

The trial court did not abuse its sentencing discretion. It did not overlook significant mitigating factors or consider improper aggravating factors. Kimerer's sentence is not inappropriate in light of the nature of his offense and his character. We affirm.

Affirmed.

Altice, J., concur.

Brown, J., dissents with opinion.

---

[7] The foregoing facts significantly diminish Kimerer's lack of prior criminal history.

| | |
|---|---|
| Joseph R. Kimerer, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 18, 2019<br>Court of Appeals Case No.<br>19A-CR-932<br>Appeal from the Tippecanoe<br>Superior Court<br>The Honorable Steven P. Meyer,<br>Judge<br>Trial Court Cause No.<br>79D02-1803-F4-7 |

**Brown, Judge, dissenting**

[44] I respectfully dissent from the majority's conclusion that Kimerer's aggregate fifty-three-year sentence with nine years suspended to probation was not inappropriate in light of the nature of the offenses and his character. Kimerer agreed to plead guilty to eight level 4 and 5 felonies without the benefit of any limitation or cap of his aggregate sentence, and the trial court imposed eight consecutive aggravated sentences. *See* Ind. Code § 35-50-2-5.5 (six-year advisory sentence for a level 4 felony); Ind. Code § 35-50-2-6 (three-year advisory sentence for a level 5 felony). There was no physical contact with the boys, he did not threaten them with harm, and the presentence investigation

report indicates that Kimerer's overall risk assessment score using the Indiana risk assessment tool places him in the low risk to reoffend category. Prior to these offenses, Kimerer had been a teacher for eighteen years and had no criminal history.

[45] It is significant that Kimerer had no prior history of delinquency or criminal activity, a factor that generally comments favorably on a defendant's character, especially when there is no such activity for a substantial time. *See* Ind. Code § 35-38-1-7.1(b)(6) (providing the court may consider, as a mitigating circumstance, that a "person has no history of delinquency or criminal activity, or the person has led a law-abiding life for a substantial period before commission of the crime"). We have held that "[t]he statute appropriately encourages leniency toward defendants who have not previously been through the criminal justice system" and that "[s]uch mitigation is especially appropriate for a defendant . . . who has lived a law-abiding life for decades." *Biehl v. State*, 738 N.E.2d 337, 339 (Ind. Ct. App. 2000) (noting Indiana Supreme Court opinions recognizing the significance of a lack of criminal history in sentencing), *trans. denied*. *See Powell v. State,* 769 N.E.2d 1128, 1136 (Ind. 2002) (noting that generally the lack of criminal history should be given substantial mitigating weight), *reh'g denied*, *abrogated on other grounds*; *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (noting a defendant's age is highly relevant in determining the weight to be given to his lack of criminal history). In *Monroe v. State*, the defendant was convicted of five counts of child molesting as class A felonies and sentenced to a total executed term of 100 years. 886

N.E.2d 578, 579 (Ind. 2008). The Indiana Supreme Court observed that the defendant was in a position of trust with the victim and molested the victim repeatedly over two years, noted that his prior convictions were all driving-related misdemeanor offenses, and revised his sentence to 50 years pursuant to Ind. Appellate Rule 7(B). *Id*. at 580-581.

[46] Further, as Indiana's sentencing scheme is founded upon principles of reformation and not vindication, *see* Ind. Const. art. I § 18, Indiana courts should attempt to distinguish offenders with no or minimal criminal histories from those with extensive criminal histories. *See Bluck v. State*, 716 N.E.2d 507, 514 (Ind. Ct. App. 1999) (holding that, "where reasonably possible, sentencing orders should distinguish between first offenders and repeat offenders"). A lengthy prison term for an offender who has no prior criminal history and has been determined to be a low risk to reoffend, such as Kimerer's aggregate term under these circumstances, does not reflect the goals of reformation or rehabilitation.[8]

---

[8] *See Does v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016) (noting the "significant doubt cast by recent empirical studies" on statements in *McKune v. Lile*, 536 U.S. 24 (2002), and *Smith v. Doe*, 538 U.S. 84 (2003), that the risk of recidivism posed by sex offenders is frightening and high); Ira M. Ellman & Tara Ellman, *"Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 CONST. COMMENT. 495, 503-504 (2015) (summarizing the results of various studies, some suggesting the risk of recidivism within five years for low-risk sex offenders is similar to that of non-sex offenders and that sex offenders who have not reoffended after fifteen years are not high-risk for doing so regardless of their offense or initial risk assessment, and others suggesting that sex offenders are less likely to commit a new felony of any kind after release than other released felons); Patrick A. Langan, Erica L. Schmitt, & Matthew R. Durose, Bureau of Justice Statistics, *Recidivism of Sex Offenders Released From Prison in 1994*, at 1-2 (Nov. 2003), https://www.bjs.gov/content/pub/pdf/rsorp94.pdf) (last visited December 9, 2019) (stating that, with respect to rearrests for any kind of crime, sex offenders were rearrested at a lower rate, 43 percent, than non-sex offenders, 68 percent, and that 5.3% of sex offenders were rearrested for a sex crime compared with 1.3% for non-sex offenders).

After due consideration, and in light of his guilty plea without the benefit of a sentencing agreement, the lack of physical contact, his lack of a history of criminal activity for decades, and the determination that he is a low risk to reoffend, I would revise Kimerer's aggregate fifty-three-year sentence pursuant to Ind. Appellate Rule 7(B). *See Tyler v. State*, 903 N.E.2d 463, 469 (Ind. 2009) (reducing the defendant's aggregate sentence of 110 years for two counts of child molesting as class A felonies, vicarious sexual gratification as a class D felony, and an habitual offender enhancement to 67.5 years pursuant to Ind. Appellate Rule 7(B) and noting the defendant did not use physical force and had no prior sex offenses); *Bass v. State*, 947 N.E.2d 456, 459 (Ind. Ct. App. 2011) (finding the defendant's sentence of concurrent terms of seven years with two years suspended for child molesting and attempted child molesting as class C felonies was not inappropriate where the defendant preyed on his girlfriend's younger sister and violated a position of trust in separate incidents and did not have an extensive criminal history), *trans. denied*; *Phelps v. State*, 914 N.E.2d 283, 293 (Ind. Ct. App. 2009) (reducing the defendant's aggregate sentence of eight years for two counts of vicarious sexual gratification and dissemination of matter harmful to minors to a total term of four years and noting the defendant played a pornographic movie and masturbated with three boys ages thirteen and fourteen, pled guilty, had no prior convictions, and previously had a productive work life); *Golden v. State*, 862 N.E.2d 1212, 1218 (Ind. Ct. App. 2007) (affirming the defendant's aggregate sentence of twenty years following his guilty plea to sexual misconduct with a minor as a class B felony and to being a repeat sex offender where he molested his stepdaughter over several

months, there were additional uncharged crimes that occurred over a period of several years and he would threaten to harm the children physically, and he had prior convictions including molestation offenses), *trans. denied*.